**Minich v. Aetna Casualty & Surety Co.**

*George F. Douglas, Jr.,* for plaintiff.
*Thomas B. Schmidt, III,* for defendant.

SHUGHART, *S.J.,* April 8, 1983 — Michael Allen˙ Minich died March 20, 1979, from injuries he sustained in an automobile accident March 11, 1979. Minich's surviving spouse, Ginger L. Minich, brought this assumpsit action against Aetna Casualty and Surety Company (Aetna) to recover her husband's anticipated work loss benefits pursuant to a no-fault insurance policy. Ginger Minich sues both

as the surviving spouse and in her capacity as administratrix of her husband's estate. The complaint was filed December 10, 1981.

Aetna interposes two defenses to the action for work loss benefits. As its first defense, Aetna contends that the decision of the Pennsylvania Supreme Court in Allstate Insurance Co. v. Heffner, 491 Pa. 447, 421 A.2d 629 (1980), construing the No-fault Act[1] as allowing suits for a decedent's work loss benefits, should not be applied retroactively. Since the cause of action in the instant case arose before the Heffner decision, Aetna argues that if Heffner does not apply retroactively this action is barred. The Pennsylvania Superior Court decided this very issue in the recent cases of Baker v. Aetna Casualty and Surety Co., _____ Pa. Super. _____, 454 A.2d 1092 (1982), and Shomper v. Aetna Life and Casualty Co., _____ Pa. Super. _____, 454 A.2d 1101 (1982). In those cases, the court squarely held that the rule of Heffner should be applied retroactively, thus disposing of Aetna's first contention.

Aetna's second defense, that the present action is barred by the statute of limitations, requires more careful consideration. The applicable provision of the No-fault Act is section 106(c)(1), 40 P.S. §1009.106(c)(1):

"If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefor may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, which-

---

1. Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq.

ever is earlier. If no-fault benefits have been paid for loss arising otherwise than from death, an action for other benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of benefits."

In the instant case, three types of no-fault benefits were paid by Aetna: survivor's loss, funeral expenses, and medical expense benefits. Since medical expense benefits are benefits "arising otherwise than from death," Smiley v. Ohio Casualty Insurance Co., _____ Pa. Super. _____, 455 A.2d 142 (1983); Sachritz v. Pennsylvania National Mutual Casualty Insurance Co., 293 Pa. Super. 483, 439 A.2d 678 (1981), aff'd, 500 Pa. 167, 455 A.2d 101 (1983), the limitation applicable in this case is the one set forth in the second sentence of section 106(c)(1). Hence, the present suit is timely if it was "commenced not later than two years after the last payment of benefits." 40 P.S. §1009.106(c)(1). Unfortunately, this language is more easily stated than applied.

At first glance, this suit appears timely as the last payment occurred March 3, 1981, and plaintiff commenced the action December 10, 1981, well within the required two years. Aetna argues for a more restrictive interpretation contending that section 106(c)(1) requires an action for further benefits to be brought within two years after the last payment of benefits "arising otherwise than from death." Thus, after the last payment of benefits "arising otherwise than from death," a further payment of some no-fault benefit made as a consequence of the insured's death (a payment of survivor's loss or funeral expense benefits for example) does not begin a new two year period running.

In other words, Aetna asserts that proper construction of the final word of the section, "benefits," is accomplished by relating that word back to what proceeds it. Since the "If " clause which begins the second sentence of section 106(c)(1) refers to benefits "arising otherwise than from death," Aetna would have us read the final "benefits" of the sentence as referring to that same limited class of no-fault benefits. Since the last payment of medical expense benefits in this case occurred more than two years before the filing of the complaint, and since those benefits are the only ones "arising otherwise than from death," the action would be too late under Aetna's formulation of section 106(c)(1).

We appear to break some new ground in deciding the merits of Aetna's argument. While several cases construing section 106(c)(1) were cited to us, see e.g., Platts v. Government Employees Insurance Co., 301 Pa. Super. 379, 447 A.2d 1017 (1982); Bewley v. Aetna Life and Casualty Co., 298 Pa. Super. 63, 444 A.2d 176 (1982); McGlade v. Ohio Casualty Insurance Co., 18 D.&C.3d 767, aff'd per curiam, 295 Pa. Super. 563, 435 A.2d 919 (1981), none speaks directly to the issue presented here. Likewise, the recent Supreme Court decision interpreting section 106(c) of the No-fault Act, Sachritz v. Pennsylvania National Mutual Casualty Insurance Co., 500 Pa. 167, 455 A.2d 101 (1982), is not exactly on point, but that decision is helpful and aids in our resolution of the issue at hand.

In Sachritz, plaintiff was injured in an automobile accident occurring August 16, 1976. He died September 5, 1976, from his injuries. The last payment of no-fault benefits in Sachritz was February 28, 1977. Construing section 106(c)(1) in light of these facts, Justice Hutchinson stated:

"We find that the second sentence in section 106(c)(1) . . . has provided appellant in this case with an extension of time from the old period of two years after the injury was done to a period 'not later than two years after the last payment of [no-fault] benefits,' i.e. till February 29, 1979 instead of August 16, 1978." (Brackets in original.)

Sachritz, 500 Pa. at 176, 455 A.2d at 106. The insertion of "No-fault" before the word "benefits" is the work of Justice Hutchinson. That insertion makes clear that he reads the final "benefits" in section 106(c)(1) to include any type of no-fault benefit as opposed to only those benefits "arising otherwise than from death." Such an interpretation runs directly counter to Aetna's argument in this case. While Justice Hutchinson's construction of the word "benefits" was not necessary to the result in Sachritz, and hence strictly speaking is dicta, it cannot but weigh heavily in our own construction of the section.

We are further encouraged by the Superior Court's rejection of constructions of the No-fault Act which treat the modifiers of one word as carrying over or relating back to apply to other words. See Smiley v. Ohio Casualty Insurance Co., supra; Chesler v. Government Employees Insurance Co., 302 Pa. Super. 356, 448 A.2d 1080 (1982). Had the legislature desired to confine the term benefits as used in section 106(c)(1) to mean only benefits "arising otherwise than from death," they could have done so in plain fashion. By first referring to benefits "arising otherwise than from death" and later switching to simply "benefits," it is logical to assume the legislature intended a change in meaning.

This is particularly true in light of the stated purposes of the No-fault Act, which have served to guide the appellate courts in a number of decisions. In its opinion in the Heffner case, the Superior Court points out that one of the purposes of the No-fault Act is to insure "the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents on Commonwealth highways." Heffner v. Allstate Insurance Co., 265 Pa. Super. 181, 187, 401 A.2d 1160, 1162 (1979) (quoting 40 P.S. §1009.102(3)). The court went further to note that

"[h]istorically, the courts of this Commonwealth have routinely followed this spirit and found coverage for the insured in close or doubtful insurance cases. The tendency has been that if we should err in ascertaining the intent of the legislature or the intendment of an insurance policy we should err in favor of coverage."

Id. at 187, 401 A.2d at 1162-63. Generous application of this policy dictates that when presented with two admittedly plausible constructions of the No-fault Act, we choose the construction that preserves coverage.

We hold that the proper construction of section 106(c)(1) is achieved by reading the final "benefits" as referring to any type of no-fault benefits. A restructured rendering of section 106(c)(1) might read as follows:

"If [some] no-fault benefits have been paid for loss arising otherwise than from death, an action for [any] further [no-fault] benefits, other than survivor's benefits, by either the same or another claimant; may be commenced not later than two years after the last payment of [any no-fault] benefits."

In the instant case, the last payment of any no-fault benefit was the payment of a survivor's loss claim on March 3, 1981. This action, filed December 10, 1981, comes well within the required two years after the March 3, 1981 payment.

Rejection of both of Aetna's defenses compels us to grant summary judgment in favor of the plaintiff for the $15,000 anticipated work loss of her deceased husband, Michael Allen Minich. Freeze v. Donegal Mutual Insurance Co., 301 Pa. Super. 344, 447 A.2d 999 (1982).

Two issues remain to be considered. The first concerns the extent of the interest owing on the overdue payment of the work loss claim. The plaintiff asks for 18 percent interest on the sum of $15,000 from December 9, 1979. Aetna objects on the basis that an issue of fact remains as to whether the company was notified of the loss. The plaintiff's motion for summary judgment alleges that a claim for work loss was made December 9, 1979. We do not find this allegation disputed in Aetna's pleadings; therefore, there is no issue of fact as to notice. Aetna also argues that the $15,000 work loss due the plaintiff is payable in monthly installments with a limit of $1,000 a month on any payment. In light of the Superior Court's decision in Hartleb v. Ohio Casualty Insurance Co., 305 Pa. Super. 231, 451 A.2d 506 (1982), we recently rejected the same argument in Bulgin v. Pennsylvania Assigned Claims Plan, No. 655 Civil 1981 (Cumb., Filed March 7, 1983). Therefore, interest will be awarded at 18 percent from December 9, 1979, on the entire amount of $15,000.

Finally, there is plaintiff's request for attorney's fees. Section 107(c) of the Act allows the court to grant reasonable attorney's fees to successful plaintiffs when it "determines that the [insurer] has de-

nied the claim . . . without reasonable foundation." 40 P.S. §1009.107(c). Attorney's fees must be denied here since Aetna's statute of limitations defense was a "reasonable foundation" upon which to deny the claim. No appellate court holding had previously resolved that particular issue, and the answer was by no means obvious.

## ORDER OF COURT

And now, April 8, 1983, for the reasons appearing in the opinion filed this date, the defendant's motion for summary judgment is dismissed. Summary judgment is granted in favor of the plaintiff in the amount of $15,000 with interest at 18 percent per annum from December 9, 1979.